Jan REITSMA, Director of the
Rhode Island Department of
Environmental Management

v.

GLOBAL WASTE RECYCLING, INC.

No. 2000–318–Appeal.

Supreme Court of Rhode Island.

Nov. 1, 2000.

John Andre Langlois, Providence, for Plaintiff.

Gregory L. Benik, Providence, John B. Webster, Warwick, for Defendant.

Present: WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before us on the show-cause calendar pursuant to an order of this Court dated August 10, 2000. That order denied a motion filed by the defendant, Global Waste Recycling, Inc. (Global), for a stay of a Superior Court injunction preventing Global, a construction and demolition recycling business, from engaging in certain business activities. In particular, because Global had failed to obtain a $1,000,000 insurance policy and/or bond to cover the estimated costs of closing its recycling facility, as it had been previously ordered to do, the Superior Court enjoined Global from accepting additional waste material for recycling at its facility.

The plaintiff, Jan Reitsma, director of the Rhode Island Department of Environmental Management (DEM), filed this action in the Kent County Superior Court, seeking injunctive relief against Global. Pursuant to a 1995 Superior Court consent judgment, Global had been operating a recycling facility in Coventry subject to, among other things, its submission of an acceptable license application to DEM for operating a construction-and-demolition-debris processing facility. Despite numerous attempts to do so, however, Global was unable to submit an application that DEM considered satisfactory. Hence, DEM is-

sued a notice of intent to deny Global's application, specifying numerous deficiencies in Global's efforts to submit the requisite information. Ultimately, DEM's office of waste management denied Global's application for a license to operate a construction-and-demolition-debris processing facility and ordered Global to close its operations. Global has appealed this license denial to the DEM's adjudication division, and its appeal is still pending.

Meanwhile, DEM sought injunctive relief in Superior Court to force Global to cease accepting additional waste materials during the pendency of its license-denial appeal. Among other reasons for seeking such relief, DEM cited Global's lack of an adequate closure fund to cover the expected costs of closing down its operations, as required by the applicable DEM regulations. *See* Rules and Regulations for Composting Facilities and Solid Waste Management Facilities, Department of Environmental Management, 12 Code R.I. Reg. 030–021–1.5.10 (1997).

Contrary to these regulations, Global failed to file with DEM an estimate of the closure costs for a third party to remove all the waste material from the site when the facility was operating at full capacity. *See* Rules and Regulations for Composting Facilities and Solid Waste Management Facilities, Department of Environmental Management, 12 Code R.I. Reg. 030–021–1.5.10(b)(1), 030–021–7.2.08(c) (1997). Although on many occasions DEM had requested it to do so, Global failed to file with DEM any estimate for the cost of closing its facility. Based on a site visit, DEM then estimated that the site contained approximately 150,000 cubic yards of solid waste and that it would cost well over one million dollars to remove all of this material. The 1995 consent judgment also required Global to establish a closure account. But Global funded it with only about $241,000. Thus, DEM alleged and the trial court determined that the account was underfunded.

After receiving evidence over many months, the Superior Court on May 19, 2000, granted DEM's motion for a preliminary and permanent injunction. The court's order required Global to post a closure bond and to undertake various other tasks as a condition of its being allowed to accept additional material at its facility. Among other terms and conditions, the court's May 19 order and injunction required Global to submit a $1,000,000 closure fund to DEM by June 19. Global could also satisfy this requirement by establishing a depository account, or by procuring some other type of bond or surety, as long as the form of the surety was satisfactory to DEM.

By June 19, however, Global had failed to obtain any closure bond or other form of surety, asserting that it had insufficient money to do so. It then suggested that the only type of surety it could obtain would be an insurance policy. In response, the court modified its previous order and allowed Global to obtain such a policy, as long as the policy was acceptable to DEM.

In response to Global's pleas for additional time, the court also granted its request for an extension of the date Global was required to submit an interim insurance policy to DEM for its review and acceptance. Through an order entered on July 7, 2000, the court, however, ordered Global to submit an interim insurance policy that would be acceptable to DEM on or before July 10 and to submit a final permanent version of such a policy by August 29. But Global failed to meet the July 10 deadline. As a result, the court's July 7 order barred Global from accepting any additional materials at its Coventry facility. Nevertheless, Global continued to accept such material, and its insurance company refused to adopt language suggested by Global's lawyers as a proposed modification of the insurance policy. Consequently, the trial justice set a new deadline for Global to obtain an acceptable insurance policy, but Global also failed to meet

this new deadline. In the end, it simply was unable to obtain a policy that would cover the expected costs for closing its facility and that did not also include exceptions for asbestos, lead, and/or intentional conduct—exceptions that could have allowed the insurer to evade payment for a substantial portion of the expected closure costs. Global then filed this appeal, and it now seeks a stay of the trial justice's permanent injunction dated July 24, 2000.

In reviewing the parties' submissions and the record below, we shall assume without deciding not only that the Superior Court's July 24 order is properly the subject of this appeal, but also that Global's attempt to appeal from the May 19 and July 7 orders was timely. When Global failed to comply with the closure fund requirements in the court's May 19 permanent injunction order, the Superior Court extended to Global another five weeks to do so. Finally, on July 24, 2000, the court ruled that Global had failed to meet the insurance policy requirements relating to the closure fund. As a result, it barred Global from accepting any new materials and from engaging in any other activity that would exacerbate the already unacceptable site conditions.

In light of this record establishing Global's repeated noncompliance with the Superior Court's orders relative to funding the expected closure costs for this facility, we are of the opinion that Global's appeal is meritless. Global failed to comply with the court's July 10 deadline for it to obtain a $1,000,000 bond or insurance policy acceptable to DEM relative to the estimated closure costs for its facility. In particular, it failed to obtain a policy that did not contain coverage exceptions that would have undercut the policy's basic purpose of guarantying payment of the facility's estimated closure costs. Moreover, because DEM deemed wholly inadequate the closure plan Global submitted with its license application, it rejected Global's plan when it denied the license application. Thus, Global even lacked an approved closure plan for the site. Therefore, no such approved plan existed for any policy of insurance to cover.

But the dispositive factor of this appeal is that Global not only failed to obtain DEM's approval of an acceptable closure plan, it also failed, on or before any of the court's deadlines, to submit an acceptable $1,000,000 bond or insurance policy to secure the estimated cost of closing its facility. Yet it was required to do so to avoid the court's order closing its facility to the receipt of new material. As we said in *Durfee v. Ocean State Steel, Inc.,* 636 A.2d 698 (R.I.1994), "[b]usiness entities can no longer ignore the adverse environmental impact of their operation, nor can industrial enterprises ignore court orders. It is our belief that [the facility operator], by its own volition, was involved in a very high-stakes game of brinkmanship. It now must absorb the consequences of its actions." *Id.* at 706.

For these reasons, we deny Global's appeal and affirm the above-referenced Superior Court orders.